## UNITED STATES DISTRICT COURT
### for the SOUTHERN DISTRICT OF INDIANA,
### INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| **THOMAS EDWARD SANDUSKY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| *vs.* | ) | |
| | ) | |
| **ST. JUDE CHILDREN'S RESEARCH** | ) | |
| **HOSPITAL, INC.,** | ) | |
| | ) | |
| **Defendant and Third-party** | ) | **CAUSE NO.  1:11-cv-1158-DKL-JMS** |
| **Plaintiff,** | ) | |
| | ) | |
| *vs.* | ) | |
| | ) | |
| **FUND DEPOSITED IN COURT** | ) | |
| **REGISTRY ($75,788.64),** | ) | |
| | ) | |
| **Third-party Defendant.** | ) | |

### ENTRY
#### on
*Motion to Dismiss Complaint* **(statute of limitations) [doc. 38],**
*Motion to Dismiss Complaint* **(failure to state a claim) [doc. 41], and**
*Motion to Dismiss Complaint* **(standing, real party in interest) [doc. 43]**

Plaintiff and Defendant are adverse claimants to an annuity's death-benefit proceeds.  The proceeds have been deposited in the registry of the Court by the now-dismissed issuer of the annuity.  Now before the Court are Defendant's above-entitled motions to dismiss.

This case was initiated by a complaint for interpleader filed by Principal Life Insurance Company ("Principal Life") against Thomas Edward Sandusky and St. Jude

Children's Research Hospital, Inc.[1] [doc. 1] ("*Principal Life Complaint*").  This complaint alleged that, on March 25, 2008, Lucille M. Sandusky, Mr. Sandusky's mother, applied for a Flexible Premium Deferred Annuity Plus contract[2] from Principal Life that named herself as the owner and St. Jude as the primary beneficiary of the death benefit.  [Doc. 1-1, PageID #: 6.]  Documents attached to the *Complaint* indicate that the annuity contract was purchased through "Keycorp Insurance Agency USA Inc.," which is identified as the "Primary Servicing Producer" and "Selling Producer(s)" of the contract.[3] [Doc. 1-2, PageID #: 10.] These documents also reveal that the "initial premium" that Ms. Sandusky paid on April 1, 2008 was $70,000.  [Doc. 1-2, Page ID ##:  6, 10, 12, 30.]  Principal Life issued the annuity contract on April 1, 2008.  Ms. Sandusky died on June 1, 2009.  Principal Life alleged that, as of December 26, 2010, the death benefit amounted to approximately $78,166.56.[4]  *Principal Life Complaint* ¶ 9.

---

[1] Also referred to in this case as the "Danny Thomas Pavilion St. Jude Children's Research Hospital."

[2] See http://www.principal.com/retirement/ind/anppfa.htm.

[3] KeyCorp Insurance Agency USA Inc. is affiliated with, but a separate entity from, KeyBank, which is owned by KeyCorp.  KeyCorp Insurance Agency USA Inc. offers insurance products marketed by KeyBank. https://www.key.com/html/ira-investments-retirement.html (last visited August 29, 2012).

[4] Under Ms. Sandusky's deferred-annuity contract, a death benefit was payable if the owner died prior to the Annuitization Date, which is the date when periodic annuity benefit payments to the annuitant begin.  [Doc. 1-2, Page ID ##:  32 and 35.]  With an immediate-annuity contract, income payments start no later than one year after the single premium is paid.  However, under Ms. Sandusky's deferred-annuity contract, "[t]he income payments . . . often start many years later."  [Doc. 1-2, Page ID #: 19.]  The amount of the death benefit is the annuity's "accumulated value" as of the date of death, which is

Documents attached to Mr. Sandusky's combined response to the present motions to dismiss show that, on May 29, 2001, his mother established an *inter vivos* trust named the Lucille M. Sandusky Revocable Living Trust Agreement ("*Trust*"), see [doc. 51-1 (first amendment to *Trust*)], and executed a Last Will [doc. 52-2] ("*Will*"), both of which were amended on June 21, 2005 [docs. 51-1 ("*Trust Amendment*") and 51-3 ("*Will Codicil*")].  The *Will* provides that the remainder of Ms. Sandusky's property, after payment of debts and taxes, are bequeathed to the trustee of the *Trust*, who is directed to add the property to the *Trust* principal and hold, administer, and distribute it in accordance with the terms of the *Trust*.   *Will*, Articles III and IV.   Mr. Sandusky was named as the sole personal representative of the *Will*, *Will*, Article V(1); *Will Codicil*, First, and is a trustee of the *Trust*, *Complaint/Claim for the Proceeds Held in the Court's Registry* [doc. 35] ("*Sandusky Claim*"), ¶¶ 6 and 9.[5]  Mr. Sandusky alleges that he is the sole and only heir and beneficiary of Ms. Sandusky.  *Id.* ¶¶ 1, 6, and 9.

An attorney representing Mr. Sandusky as "Trustee of the Lucille M. Sandusky Trust" sent a letter dated June 25, 2009 — twenty-four days after Ms. Sandusky's death —

---

the amount of premiums paid, plus interest credited, less taxes, and less any reductions due to partial surrenders and/or partial annuitizations.  [Doc. 1-2, Page ID ##:  33 and 35.] Apparently, Ms. Sandusky died before receiving any periodic annuity payments.  The actual calculation of the death benefit that Principal Life deposited with the Court was not provided.

[5] The original *Trust* instrument was not submitted.  The *Trust Amendment* suggests that Ms. Sandusky was the sole original trustee and that, on her death, Mr. Sandusky succeeded her as the sole trustee.

addressed to "Principle [*sic*] Financial Group / Key Investment Services LLC."[6] [Doc. 1-4.] The letter advised that Mr. Sandusky was his mother's sole and only heir, that he recently learned of the annuity contract, and that his mother was not competent to enter into the annuity contract. The letter asked the recipient to provide whatever information it had that Ms. Sandusky was competent and demanded that a check be issued "payable to the Lucille M. Sandusky Trust in the amount originally invested along with interest." [Doc. 1-4, PageID #: 47.] Principal Life alleges that it was notified of Ms. Sandusky's death by Mr. Sandusky's counsel on April 23, 2010 (ten months after the date of counsel's 2009 letter) and that counsel also forwarded a copy of his June 25, 2009 letter sent to Key Investment Services LLC. *Principal Life Complaint* ¶ 10. In October 2010, Principal Life received a beneficiary statement from St. Jude seeking the annuity's death benefit. Over the next several months, Mr. Sandusky, St. Jude, and Principal Life attempted to resolve the dispute about the validity of the annuity and the death-benefit beneficiary. *Id.* ¶ 12. On June 2, 2011, apparently after the informal resolution efforts failed, Mr. Sandusky requested that Principal Life file a declaratory-judgment action [doc. 1-6, PageID #: 55.] and, on August

---

[6] This letter was sent to a Key Investment Services LLC's office in Shelby Township, Michigan. [Doc. 1-4.] It was not addressed to any office of Principal Financial Group, Principal Life Insurance Company, or KeyCorp Insurance Agency USA Inc. Principal Life Insurance Company is "the largest member company of the Principal Financial Group and Principal National Life Insurance Company . . . ." http://www.principal.com/ about/financialstrength.htm. Key Investment Services LLC, like KeyCorp Insurance Agency USA Inc., is affiliated with KeyBank. https://www.key.com/html/ ira-investments-retirement.html (last visited August 29, 2012). Apparently, neither Principal Life Insurance Company nor Principal Financial Group are affiliated with Key Investment Services LLC or any other KeyBank or KeyCorp entity.

25, 2011, Principal Life filed its interpleader complaint that initiated this suit.   On stipulation of the parties, Principal Life deposited into the registry of the Court the amount of $75,788.64, representing the annuity contract's death benefit [docs. 21 and 36], and was discharged and dismissed from this Cause [doc. 37].[7] Mr. Sandusky then was realigned as plaintiff and St. Jude remained as defendant [doc. 37].  Both sides repled.

On January 22, 2012, Mr. Sandusky filed his complaint or claim for the funds on deposit.   He alleges that his mother "was not mentally competent and did not have capacity to enter into a contract on March 25, 2008" and, therefore, "the Contract entered into on March 25, 2008 is void." *Sandusky Claim* ¶ 5.  "[A]s Trustee of the Irrevocable Trust of Lucille M. Sandusky and sole and only heir of Lucille M. Sandusky," Mr. Sandusky asserts his claim "for the proceeds of the Annuity." *Id.* ¶ 6.  He prays that the Court (1) find that Ms. Sandusky was not mentally competent to enter into the annuity contract, (2) hold that the annuity contract is void, and (3) order the "funds currently held in the Court's registry" be paid to him as Trustee of the *Trust* and sole heir and beneficiary of Ms. Sandusky. *Id.* ¶ 9.  In its claim, St. Jude alleges that it is entitled to the funds in the Court's registry because the annuity contract names it as the beneficiary of the death benefit. *Third Party Claim of St. Jude Children's Research Hospital, Inc. to Funds Held in Court's Registry* [doc. 46] ("*St. Jude Claim*").  In its answer to the *Sandusky Claim*, St. Jude denied that Ms.

---

[7] Although, as noted, Principal Life alleged that, as of December 2010, the death benefit amounted to approximately $78,166.56, *Principal Life Complaint* ¶ 9, it ultimately deposited only $75,788.64, representing the value of the death benefit [docs. 19, 20, and 32]. Its calculation of the death benefit was not provided.

Sandusky was mentally incompetent when she executed the annuity contract.  *Answer of St. Jude Children's Research Hospital, Inc. to Complaint* [doc. 45].

St. Jude now moves to dismiss Mr. Sandusky's claim to the registry fund on the grounds that his claim is time barred, he has failed to state a claim in his capacity as Trustee of the *Trust*, and he lacks standing in his personal capacity as heir of his mother.

### Statute of Limitations

St. Jude argues that Mr. Sandusky's complaint should be dismissed because he failed to file his action within the two-year statute of limitation provided by Indiana law[8] for injury to personal property.  Indiana Code 34-11-2-4 ("An action for . . . injury to personal property . . . must be commenced within two (2) years after the cause of action accrues.").  St. Jude argues that Indiana determines the proper statute of limitation to apply based on the "nature or substance" of a plaintiff's cause of action, meaning the nature of the harm alleged, not based on the form of the action, meaning the particular legal theories for recovery pled.  *Brief in Support of Motion to Dismiss for Failure to File Claim within Two Year Statute of Limitations* [doc. 39] ("*St. Jude's Limitations Brief*") at 2 (citing *Whitehouse v. Quinn*, 477 N.E.2d 270 (Ind. 1985); *Shideler v. Swyer*, 417 N.E.2d 281 (Ind. 1981); and *Koehring Co. v. National Automatic Tool Co., Inc.*, 257 F.Supp. 282, 292 (S.D. Ind. 1966), *affirmed*, 385 F.2d 414 (7th Cir. 1967)).  St. Jude contends that the essence of Mr. Sandusky's claim "is the

---

[8] The parties do not dispute that Indiana law provides the period of limitation for Mr. Sandusky's action.

alleged wrong suffered by his mother when the party with whom she was dealing, whether it be Key Investment Services, Principal Life Insurance Company, or anyone else, accepted money from her at a point in time when she was not of sound mind." *St. Jude's Limitations Brief* at 3. St. Jude argues that, because this wrongful invasion of Lucille Sandusky's property rights constitutes the tort of conversion, which deprived her of the use of her money, Mr. Sandusky's claim alleges an injury to personal property. *Id.*

Although Mr. Sandusky alleges that he did not learn of his mother's purchase of the annuity until after her death, St. Jude argues that his date of discovery is irrelevant because the two-year limitation period began to run when his mother purchased the annuity — either March 25, 2008 (the application date) or April 1, 2008 (the issue date).[9] Thus, a two-year period would have expired on either March 25 or April 1, 2010, over a year before Principal Life filed suit. However, St. Jude also contends that the period of limitation was expanded by Indiana's survivor's statute to eighteen months beyond Lucille Sandusky's death:

> If any person entitled to bring, or liable to, any action, dies before the expiration of the time limited for the action, the cause of action:
>
> (1) survives to or against the person's representatives; and
>
> (2) may be brought at any time after the expiration of the time limited within eighteen (18) months after the death of the person.

---

[9] St. Jude points out that Mr. Sandusky does not allege that St. Jude actively concealed the annuity from him, which could have triggered a later commencement of the limitation period.

Ind. Code 34-11-7-1. *St. Jude's Limitations Brief* at 4. St. Jude thus interprets Mr. Sandusky's claim as a survivor's action, asserting a tort claim for violation of his mother's personal-property rights (loss of use of her premium money) that she possessed at the time of her death.[10]  Commencing the eighteen-month extension of the period of limitation at Lucille Sandusky's death on June 1, 2009, St. Jude contends that the period expired on December 1, 2010, long before Principal Life filed its interpleader complaint in August 2011 and Mr. Sandusky filed his complaint in January 2012.

In response, Mr. Sandusky denies that he asserts a tort claim for conversion and points to the fact that he has sued neither Principal Life, the issuer of the annuity, nor Keycorp Insurance Agency USA, Principal Life's agent who solicited Lucille Sandusky, either or both of whom would be potentially responsible for any conversion.  He does not identify in his *Claim* or in his response on the present motion a specific cause of action or legal theory entitling him to a remedy; he simply asserts that his purpose from the very beginning of this dispute — as shown by his counsel's July 25, 2009 letter to Key Investment Services — has been "setting aside the contract" due to the fact of his mother's incompetence.  *Response to Defendant's Motions to Dismiss* [doc. 50] ("*Sandusky's Response*") at 4. *Sandusky Claim* ¶ 5.  His complaint asks only that the Court find that Lucille Sandusky was mentally incompetent to enter into the annuity contract and, therefore, find that the annuity contract is void.  *Id.* at p. [2].

---

[10] "The relief sought by Plaintiff is for injury sustained *by the decedent* to her personal property."  *St. Jude's Limitations Brief* at 4 (emphasis added).

Because he seeks to set aside the annuity contract, Mr. Sandusky argues that the applicable limitation period is the six years provided for written contracts for the payment of money:

> An action upon promissory notes, bills of exchange, or other written contracts for the payment of money executed after August 31, 1982, must be commenced within six (6) years after the cause of action accrues.

Ind. Code 34-11-2-9.  A six-year period of limitation renders any question of claim accrual irrelevant.[11]

St. Jude's reply takes three alternative avenues due to the uncertainty about the nature of Mr. Sandusky's claim.  First, St. Jude reiterates its contention that the heart of Mr. Sandusky's claim is to recover the money, the premium, that his mother paid for the annuity.  Because Mr. Sandusky alleges that his mother was mentally incompetent at the time, St. Jude contends that the nature of his claim is that either Principal Life or Key Investment Services exercised unauthorized control over her money and deprived her of the use of it, which constitutes the tort of conversion of personal property.  Such an action, according to St. Jude, is a survivor's action that can be brought only by Lucille Sandusky's personal representative on behalf of her estate against the alleged tortfeasor(s).  The nature of the harm is not Mr. Sandusky's loss of an inheritance or the *Trust*'s loss of assets, but Lucille Sandusky's loss of the use of her money between the purchase of the annuity and

---

[11] Whether the limitation period commenced when Mr. Sandusky's mother purchased the annuity (March or April 2008), when she died (June 2009), or when Mr. Sandusky first learned of the annuity (June 2009), his claim was asserted legally before a six-year period expired, at the earliest, in March 2014.

her death.  As a tort suit for the recovery of money wrongfully taken, Indiana's two-year limitation period applies.

Second, St. Jude addresses the inconsistency in Mr. Sandusky's assertions.  On the one hand, he has invariably maintained that the annuity contract is void because his mother was not mentally competent to enter into it.  On the other hand, Mr. Sandusky has consistently demanded, in this Cause, that the annuity's death benefit be paid to him as trustee of the *Trust* and/or as only heir of his mother.  *Answer of Thomas Edward Sandusky to* [*Principal Life's*] *Complaint* [doc. 16] at p. [3]; *Sandusky Claim* ¶¶ 6 and 9, and Prayer ¶ B.[12] As St. Jude points out, requesting relief in the form of the annuity's death benefit is not a claim to void the contract, but a claim to reform it by changing the designated death beneficiary and then to enforce the contract as reformed.  Without explicitly acknowledging that such a reformation action would be one "upon . . . written contracts for the payment of money" and, thus, subject to the six-year period of limitation, St. Jude argues that Mr. Sandusky's claim cannot be construed as making such a claim because reformation requires proof of fraud or mutual mistake, neither of which Mr. Sandusky has alleged.  St. Jude did not alternatively move, on these grounds, to dismiss this reformation claim for failure to state a claim.

_____

[12] In his counsel's initial letter addressed to Key Investment Services, Mr. Sandusky demanded that Principal Life and/or Key Investment Services "issue a check payable to the Lucille M. Sandusky Trust in the amount originally invested along with interest." *June 29, 2009 Letter* [doc. 1-4, PageID #: 47].  This demand for return of the premium paid was consistent with a claim that the annuity contract was void due to his mother's incapacity.

Third, and finally, assuming that Mr. Sandusky's claim is that the contract is void and that he seeks the remedy of rescission, St. Jude argues that such actions are not subject to a fixed period of limitation but, instead, to the doctrine of laches which "requires affirmative action immediately upon discovery of facts justifying it by the person seeking such rescission," *Reply Brief of Defendant* [doc. 52] ("*St. Jude Reply*") at 3 (citing *Admire v. Brewer*, 41 N.E.2d 662, 663 (Ind.App. 1942) ("Rescission of contracts has a well defined meaning and contemplates and requires affirmative action immediately upon discovery by the one seeking such rescission.")), and requires that the party seeking rescission "show that he has exercised reasonable diligence in ascertaining the facts and has been prompt in seeking the court ordered remedy of rescission within a reasonable time after the facts have been discovered," *id.* St. Jude argues that Mr. Sandusky discovered the existence of his mother's annuity, at the latest, shortly after her death on June 1, 2009 (and before his counsel's June 25, 2009 letter to Key Investment Services) and that the earliest date on which it can be said he "initiated legal action claiming the annuity was void" was November 1, 2011, when he filed his answer to Principal Life's complaint. According to St. Jude, that answer, coming almost two and one-half years after Mr. Sandusky's discovery of the annuity, is too late.

Before determining the question of the timeliness of Mr. Sandusky's claim, the muddle surrounding it must be cleared. As noted, Mr. Sandusky both alleges that the annuity contract is void due to his mother's mental incompetency and demands that the

11

contract's death benefit be paid to him.  But, if the contract is void, then there is no death benefit.[13]  On the other hand, if the contract is valid, then the death benefit can be paid to Mr. Sandusky only if the contract is equitably reformed, but he has not alleged or suggested any grounds for reformation such as a mutual mistake of fact or unilateral mistake by one party accompanied by fraud or inequitable conduct by the other party. *Meyer v. Marine Builders, Inc.*, 797 N.E.2d 760, 772 (Ind. Ct. App. 2003).  Mr. Sandusky does not allege that both his mother and either Principal Life or Key Investment Services actually came to a meeting of the minds to make the *Trust* the death beneficiary but St. Jude was mistakenly designated instead, or that his mother mistakenly designated St. Jude as the beneficiary due to fraud or inequitable conduct by either Principal Life or Key Investment Services.  Mr. Sandusky cannot both prevail on his allegations and obtain his demanded relief.

Mr. Sandusky has consistently pled and maintained on the present motion that his mother was not competent to enter into the contract as a whole and that the contract as a whole is void.[14]  He has rejected any tort theory of recovery, such as St. Jude's conversion

---

[13] Mr. Sandusky has not alleged or suggested that his mother was somehow incompetent only to the extent of naming a death beneficiary but was otherwise competent to enter into the remainder of the contract.

[14] "Lucille M. Sandusky was not mentally competent and did not have the capacity to enter the annuity contract that is the subject of this action."  *Sandusky Response* at 1. "Plaintiff's claim is based upon the fact that Mr. Sandusky was not mentally competent to enter into a contract on March 25, 2008.  Accordingly, this contract is void." *Id.* at 3.  "[T]his suit is based on the fact that Mr. Sandusky was not mentally competent and did not have the capacity to enter into a contract on March 25, 2008.  Accordingly, the annuity contract

theory.  In this case, the Court looks to Mr. Sandusky's factual allegations to define the nature of his claim and his entitlement to relief, not the specific relief that he demands.[15] Therefore, the Court construes Mr. Sandusky's claim to be for rescission or cancellation of his mother's annuity contract, not for its reformation and not for a tort recovery.

An action to rescind the annuity contract because Lucille Sandusky lacked the mental capacity to consent is an action upon a written contract for the payment of money. Nonetheless, St. Jude argues that the six-year statute of limitation provided by Ind. Code 34-11-2-9 for such actions does not apply because Indiana does not look to the form of the pleading and the legal theories pled but focuses instead on the nature or substance of the cause of action or of the harm alleged.  Relying on the Indiana Supreme Court's decision in *Whitehouse* and this Court's decisions in *Davis v. Geo. S. Olive & Co.*, 731 F.Supp. 1380 (S.D. Ind. 1990), and *Koehring Co. v. National Automatic Tool Co.*, 257 F.Supp. 282 (S.D. Ind. 1966), St. Jude contends that what Mr. Sandusky is really complaining about is Principal Life's and/or Key Investment Services' wrongful taking of his mother's premium payment. She lost the use of that money during her life and, derivatively, the *Trust* and/or Mr.

---

is void.  This has been Plaintiff's contention since the very beginning . . . ."  *Id.* at 4.  "This case involves setting aside a contract."  *Id.*

[15] A party is not bound to the specific relief demanded in its pleadings.  *See* Fed. R. Civ. P. 8(a)(2) and (3); Fed. R. Civ. P. 54(c) ("final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings"); *Cady v. City of Chicago*, 43 F.3d 326, 330 (7th Cir. 1994); *Blazer v. Black*, 196 F.2d 139, 147 (10th Cir. 1952) ("the legal dimensions of [plaintiff's] claim are measured by what he pleaded and proved — not his prayer.")

Sandusky lost that money after her death.  Thus, according to St. Jude, Mr. Sandusky is actually complaining about injury to or loss of his mother's and the *Trust*'s money, which is an injury to personal property for which Ind. Code 34-11-2-4(2) provides a two-year period of limitation.

*Whitehouse,* and *Davis* following from it, hold that the proper statute of limitation to apply is determined by "identify[ing] the substance of the cause of action by inquiring into the nature of the alleged harm." *Whitehouse*, 477 N.E.2d at 274.  *Davis*, 731 F.Supp. at 1384 ("'the applicable statute of limitations should be ascertained by reference to the nature fo the *harm* alleged.'" (quoting *Whitehouse*)).[16]  Both cases involved alleged malpractice for which the plaintiffs were seeking consequential damages.  In *Whitehouse*, the plaintiff alleged that an attorney who had prosecuted a personal-injury claim for him against several defendants, negligently drafted a release that comprised part of a settlement with one of the defendants.  This release inadvertently released Whitehouse's claims against other possible defendants.  The first count of Whitehouse's complaint claimed that the attorney's conduct constituted malpractice and the second count claimed that it constituted a breach of their contingent-fee contract.  The parties disputed whether the breach-of-contract claim was governed by Indiana's two-year statute of limitation for injuries to

---

[16] While *Koehring* held that "[t]he general rule is that, especially where forms of action have been abolished, as in Indiana, it is the nature or substance of the cause of action, rather than the form of the action, which determines the applicability of the statute of limitations," 257 F.Supp. at 292, it cited only *Corpus Juris Secundum* in support.  The decision did not address any Indiana authority.

personal property or by the twenty-year limitation for actions upon contracts in writing other than for the payment of money.[17]   Identifying the substance of Whitehouse's cause of action by determining the nature of his alleged harm, the Indiana Supreme Court concluded that "[t]he substance of Whitehouse's claim is damage to a personal property interest in the form of a tort law suit" against the inadvertently released defendants. *Whitehouse*, 477 N.E.2d at 274.  The attorney's conduct, "whether a breach of common law duty or a breach of contractual duty, resulted in injury to Whitehouse's personal property interest and in his action to recover damages for this injury." *Id.*  Therefore, the Supreme Court held that the two-year statute of limitation for injuries to personal property applied to both the negligence and breach-of-contract claims.

In *Davis*, the plaintiff alleged that an accountant whom he had engaged to prepare a tax return negligently failed to take advantage of tax benefits, resulting in an overpayment of taxes.  The decision does not describe the claims or legal theories that the plaintiff pled against the accountant's firm about three years later, but it indicates that at least negligence (accountant malpractice) was asserted.  *Davis*, 731 F.Supp. at 1384 n. 6.  The firm argued that the plaintiff's cause of action was governed by the two-year limitation for injuries to personal property and that that period had run.  The plaintiff argued that either the six-year limitation for claims based on accounts applied (he characterized his potential claim for a tax refund as an account) or the ten-year "catch-all" statute applied (in the

---

[17] Apparently, there was no dispute that the attorney-malpractice claim was governed by the two-year limitation for injuries to personal property.

absence of any other applicable statute).  Based on *Whitehouse* and the Indiana Supreme Court's earlier opinion in *Shideler v. Dwyer*, 417 N.E.2d 281 (Ind. 1981), *Davis* found that the nature of the plaintiff's harm was the loss of the use of his money in the amount of the tax overpayment.  Because this constituted injury to personal property, the Court held that Indiana's two-year limitation applied.[18]

Under Mr. Sandusky's theory, the *Trust*, directly as the pour-over beneficiary of his mother's will, and he, indirectly as a beneficiary of the *Trust*, lost the opportunity to inherit the $70,000 that his mother paid as a premium for the annuity contract.  St. Jude argues that, because this is a survivor's action, the relevant injury at issue is Ms. Sandusky's loss of the use of that premium between April 1, 2008 and her death on June 1, 2009, due to either Principal Life's and/or Key Investment Services conversion.  St. Jude makes a good argument that, according to *Whitehouse* and *Davis* and under either party's characterization of the claim, the injury is a loss of money, which is an injury to personal property, invoking Indiana's two-year statute of limitation, Ind. Code 34-11-2-4(2).  However, the Indiana Supreme Court has since clarified, or narrowed, its holding in *Whitehouse*.

In *Schuman v. Kobets*, 716 N.E.2d 355 (Ind. 1999), the plaintiff rented an apartment

---

[18] The Court rejected the plaintiff's characterization of his cause of action as an account because he did not lose his right to a tax refund because of the accounting firm's conduct; rather, its conduct created the right to a refund.  What the plaintiff lost due to the alleged malpractice was the use of the money that he overpaid in taxes.  Because such loss is injury to personal property, there was no need to resort to the catch-all statute of limitation.

from the defendants from 1989 until 1993 on an oral month-to-month lease.  About a year
after the commencement of the lease, birds began roosting in the walls and a broken
window casing.  The defendant landlords failed to effect repairs after repeated requests
and, about a month later, the plaintiff began suffering from physical ailments, including
histoplasmosis, which her doctor attributed to the excrement from the roosting birds.  The
plaintiff demanded reimbursement from the defendants for her medical costs but they
refused.  The plaintiff's histoplasmosis recurred in 1995 and she was hospitalized a second
time.  In 1996, she sued the defendants, alleging negligence, breach of implied warranty of
habitability, and nuisance.  She also claimed negligent infliction of emotional distress.

Based on *Whitehouse*, the Court of Appeals affirmed the trial court's dismissal of all
claims as barred by the two-year statute of limitation of Ind. Code 34-11-2-4(1), "injury to
person or character."  *Schuman*, 698 N.E.2d at 378) ("In the present case, the nature of the
harm suffered by [the plaintiff] was clearly injury to her person.  Accordingly, the trial
court correctly determined that the two-year statute of limitations applies.").  The Supreme
Court affirmed the dismissal of the plaintiff's tort claims because the "thrust" of those
claims sought a recovery for personal injuries she sustained due to the roosting birds and
they were filed outside the two-year limitation period for personal injuries.  However,
finding that "[s]everal of her contentions sound like a contract claim," *Id.*, 716 N.E.2d at
356, specifically her breach-of-warranty claim based on the contract that was her oral lease,
the Court reversed the dismissal of the claim, finding it governed by the six-year statute

of limitation applicable to "[a]ctions on accounts and contracts not in writing." Ind. Code

34-11-2-7(1).  The Court held, however, that:

> Of course, [the plaintiff's] recovery on her contract claim will be defined by
> the law of contract.  Her damages thus might be measured by the difference
> between the contract price and the market price of the apartment as
> delivered, for example, or by the difference between the value of the
> premises without promised repairs and with them.

*Id.*, 716 N.E.2d at 357.  See also *Lawyers Title Insurance Co. v. Pokraka*, 595 N.E.2d 244, 246-47

(Ind. 1992).   The Indiana Court of Appeals recently recognized this modification,

clarification, or limitation of *Whitehouse*'s holding:

> As our supreme court subsequently noted, however, *Whitehouse* was decided
> in the context of professional malpractice, an area which is not governed by
> a specific limitation period. *Lawyers Title Ins. Corp. v. Pokraka*, 595 N.E.2d 244,
> 247 (Ind. 1992).  Therefore, *Whitehouse* does not require application of the
> shorter limitation period in every instance where damage to personal or
> other property is alleged because "[s]uch an application would be
> tantamount to judicially repealing" the longer statutes of limitation.  *Id.*

*Powers & Sons Const. Co., Inc. v. Healthy East Chicago*, 919 N.E.2d 137, 143 (Ind. Ct. App.

2009).  See *Wells v. Stone City Bank*, 691 N.E.2d 1246, 1249-50 (Ind. Ct. App. 1998), *trans.*

*denied.*

In this case, Mr. Sandusky's allegation that his mother lacked the mental capacity

to enter into the annuity contract can support a claim for rescission or cancellation, which

is an action upon a written contract for the payment of money, for which Ind. Code 34-11-2-

9 provides a six-year period of limitation.

St. Jude argues, however, that, even as a rescission action on the contract, Mr.

Sandusky's claim is time-barred because he did not take affirmative action within a reasonable amount of time after discovering his injury. *Admire v. Brewer*, 41 N.E.2d 662, 663 (Ind. App. 1942) ("Rescission of contracts has a well defined meaning and contemplates and requires affirmative action immediately upon discovery by the one seeking such rescission."). St. Jude contends that the record shows that Mr. Sandusky had knowledge of his mother's annuity shortly after her death yet did not initiate legal action until, at the earliest, November 1, 2011, when he answered Principal Life's complaint. Coming three and one-half years after his mother applied for the annuity and two and one-half years after his attorney's letter to Principal Life and Key Investment Services demanding return of the premium, St. Jude contends that Mr. Sandusky's claim is too late as a matter of law.

Contract rescission is an equitable remedy subject to the doctrine of laches. *Koehlinger v. State Lottery Commission of Indiana*, 933 N.E.2d 534, 541 n. 6 (Ind. Ct. App. 2010), *trans. denied*; *Lowman v. Lowman*, 33 N.E.2d 780, 786 (Ind. App. 1941).

> To prevail in a defense of laches, the defendant must show "'(1) inexcusable delay in asserting a known right; (2) an implied waiver arising from knowing acquiescence in existing conditions; and (3) a change in circumstances causing prejudice to the adverse party.'" Despite this structured test, "[t]here is no fixed or definite rule for the application of the doctrine of laches."

*Richmond State Hospital v. Brattain*, 961 N.E.2d 1010, 1012 (Ind. 2012). *Town of New Chicago v. City of Lake Station*, 939 N.E.2d 638, 652 (Ind. Ct. App. 2010), *trans. denied*. St. Jude did not present authority that the "assertion of a known right" or "affirmative action" that must be asserted without delay means only legal action. In Mr. Sandusky's letter to Principal

Life and Key Investment Services (but sent only to Key Investment Services, apparently), which was sent less than a month after his mother's death, he asserted that the annuity contract was void because she lacked mental capacity at the time of its execution and demanded return of the premium.  Principal Life alleged that it did not receive notice of Ms. Sandusky's death or Mr. Sandusky's demand until April 2010, and it did not receive a completed beneficiary statement from St. Jude seeking the death benefit until October 2010.  *Principal Life Complaint* ¶ 10.  But the parties, at some point, engaged in "repeated attempts to amicably resolve this matter short of litigation . . . ."  *Id.* ¶ 11.  When those efforts failed, Principal Life filed its interpleader complaint, at Mr. Sandusky's suggestion.  *Id.* ¶ 12; [doc. 1-6, Page ID ##:  54, 55].  Therefore, it appears that Mr. Sandusky promptly undertook efforts to assert his claim after his mother's death and that St. Jude actively engaged and acquiesced in the resolution efforts mediated by Principal Life.[19]  In addition, St. Jude did not assert or show any change in circumstances before Principal Life filed its interpleader action in August 2011 that caused it prejudice.

Therefore, the Court finds and concludes that Mr. Sandusky's rescission claim is not time-barred.  However, as did the Indiana Supreme Court in *Schuman*, the Court notes that,

_____

[19]  Because neither party offered an explanation for the delay between Mr. Sandusky's initial letter in June 2009 and Principal Life's alleged first notice of Mr. Sandusky's demand in April 2010, the Court cannot find that Mr. Sandusky is responsible for the delay or otherwise sat on his hands.  At any rate, St. Jude does not cite this delay in its argument or attribute the delay to Mr. Sandusky; its argument relies only on the overall time between his mother's application for the annuity or the June 2009 letter and Mr. Sandusky's answer to Principal Life's complaint.

because rescission cancels or nullifies the contract and puts the parties, as far as possible, in *status quo ante*, *Tracy v. Morell*, 948 N.E.2d 855, 866 (Ind. Ct. App. 2011), Mr. Sandusky's recovery on his rescission claim will be calculated according to the law of rescission and not by the amount of the annuity's death benefit.[20] Any tort claims or other claims of injury to personal property that might be supported by Mr. Sandusky's allegations are time barred: whether a personal-property claim accrued when Ms. Sandusky applied for the annuity on March 25, 2008; when the contract was issued on April 1, 2008; when she died on June 1, 2009; or when Mr. Sandusky became aware of the annuity (at the latest) on June 25, 2009, all of these dates occurred more than two years before Principal Life filed this suit in August 2011.

### Failure to State a Claim

Mr. Sandusky filed his complaint in two capacities: in his personal capacity as "sole and only heir and beneficiary of Lucille M. Sandusky" and in his capacity as "Trustee of the Lucille M. Sandusky Irrevocable Trust." *Sandusky Claim*, at p. 1 and ¶¶ 1 and 6. He asked that the funds on deposit be paid to himself in those capacities. *Id.* at p. [3]. St. Jude moves to dismiss Mr. Sandusky's claim as trustee — not in his personal capacity as heir and beneficiary — because it argues that he alleges no facts supporting a claim as trustee.

---

[20] As noted above, Ms. Sandusky paid an initial premium of $70,000 for her flexible-premium annuity contract. The record does not reveal whether she paid any additional premiums. With the stipulations of both Mr. Sandusky and St. Jude, Principal Life deposited the amount of $75,788.64, representing the death benefit, into the registry of the Court and was dismissed. The parties did not provide the specific calculation of this amount.

In other words, he has not alleged any facts showing that the *Trust* is entitled to relief or may collect damages for injury to Ms. Sandusky's personal property.  Consistent with the construction of Mr. Sandusky's claim set forth above, this argument is construed as asserting that Mr. Sandusky's complaint fails to allege facts supporting a claim by the *Trust* for rescission of the annuity contract.

In response, Mr. Sandusky cites the authority and duty of trustees in Indiana to prosecute or defend actions in order to add or protect assets in the trust corpus.  He then asserts that "[i]f successful, the Trust will be entitled to the annuity proceeds since Mrs. Sandusky's Will provided that any assets not already a part of the trust at her death should pass to the trust."  *Sandusky Response* at 5.  Earlier, in the background portion of his response, Mr. Sandusky explains that his mother's will "is what is known as a 'pour over will,' which means it directs that any property that is not owned by her trust at her death is to pass to the Trust at her death."  *Id.* at 2.  He attached a copy of the will which does contain that provision.  Will, Article III.

However, St. Jude's motion to dismiss tests the sustainability of the allegations in Mr. Sandusky's complaint, not his brief, and his complaint contains no allegation that the *Trust* is the pour-over beneficiary under Ms. Sandusky's will or any other allegation tending to support a right to any recovery by the *Trust* if the annuity contract is rescinded. As such, the *Sandusky Claim* fails to state a claim in favor of Mr. Sandusky as trustee of the *Trust*.  Therefore, Mr. Sandusky's claim, in his capacity as trustee of the *Trust*, shall be

dismissed.  Mr. Sandusky shall be afforded an opportunity to move to file an amended complaint in order to make the necessary allegations that are evidently readily available.

### Lack of Standing and Lack of Real Party in Interest

St. Jude moves to dismiss Mr. Sandusky's claim in his capacity as "sole and only heir and beneficiary of Lucille M. Sandusky" because he has no standing to seek rescission in this capacity and he is not the real party in interest.  St. Jude argues that any claim to rescind the annuity contract and any right to a recovery belongs only to the personal representative of his mother's estate and not to Mr. Sandusky personally as an heir.  Citing *Inlow v. Henderson, Daily, Withrow & DeVoe*, 787 N.E.2d 385, 391 (Ind. Ct. App. 2003), *trans. denied*, St. Jude argues that, under Indiana law, an expectant heir cannot maintain an action to enforce or adjudicate a right in the property an heir may subsequently inherit; such a right belongs only to the estate's personal representative.  Relying on *First Farmers Bank & Trust Co. v. Whorley*, 891 N.E.2d 604 (Ind. Ct. App. 2008), *trans. denied*, Mr. Sandusky responds that, once an estate is closed, an heir's interest is no longer expectant, but present and substantial, and thus confers standing to bring an action to enforce an injury to the estate property.  St. Jude distinguishes *Whorley* because, in that case, there had been a probate administration of the decedent's estate whereas, in this case, there has been "no probate proceedings, no completion of the probate process, no probate administration declaring that Sandusky either as trustee or as beneficiary of the trust is entitled to the estate assets."  *St. Jude Reply* at 9.

The holding of *Inlow* is that "[d]*uring administration*, the heir, however, may not maintain a suit independent of the personal representative and without probate court authority." *Inlow*, 787 N.E.2d at 394 (emphasis added). The pendency of estate administration was critical. The *Whorley* court recognized that this was *Inlow*'s holding but distinguished it from the facts before it:

> Nevertheless, we find *Inlow* to be inapposite to the case before us. Whereas the action in the Inlow case occurred during the administration of the probate estate, here, the designated evidence clearly indicates that the probate estate had closed at the time Whorley's cause of action accrued. . . . .
>
> \*      \*      \*
>
> Here, as the probate estate had closed prior to the cause accruing, Whorley was no longer "an expectant heir [who] cannot maintain an action for the enforcement or adjudication of a right in the property the heir may subsequently inherit." *See* I.C. § 29-1-7-23. Instead, Whorley became the primary beneficiary of [the decedent's] estate: she had received most assets from the estate, and being the sole residuary beneficiary, will suffer any damages that may result from this cause of action. In this light, it is clear that Whorley sustained a direct injury as a result of First Farmer's alleged breach of fiduciary duty, a claim which became part of the probate estate upon [the decedent's ] passing and which passed to Whorley upon closing the probate estate. . . . In the absence of this alleged breach of duty, Whorley would have inherited $573,474.00. Therefore, we conclude that Whorley demonstrated a personal stake in the outcome of the lawsuit and showed that she has sustained a direct injury. *See Hammes*, 659 N.E.2d at 1029-30. Thus, we agree with the trial court and find that Whorley has standing to bring the suit.

*Whorley*, 891 N.E.2d at 611, 612. *Inlow* and *Whorley* declare that, (1) while an estate is under administration, an heir does not have standing to sue to add assets to the estate and, thus, to his own expectant inheritance, and (2) a sole or residuary heir has standing to sue if his

24

claim accrued after the estate closed.

In this case, no facts have been presented showing the status of Ms. Sandusky's estate.  St. Jude asserted that there have been "no probate proceedings, no completion of the probate process, no probate administration declaring that Sandusky either as trustee or as beneficiary of the trust is entitled to the estate assets."  However, no evidence thereof has been presented and the status of the estate has not been explained.  The only evidence presented is an April 4, 2012 *Order of Probate of Will and Codicil Without Administration (Will Spread of Record)* [doc. 51-4] issued by the Vermillion Circuit Court, which finds that Ms. Sandusky died on June 1, 2009 while domiciled in Vermillion County; that the will that was produced to the court was duly executed and entitled to probate, and that the petitioner (presumably Mr. Sandusky) was "merely requesting Probating the Will and Codicil and Spreading the Same of Record."  The *Order* admitted the will to probate.  No further evidence of the administration (or non-administration) or closure of Ms. Sandusky's estate was submitted.  The legal effect or import of this *Order* has not been explained.  In these circumstances, the Court cannot determine whether the estate is still being administered or has closed.

A claim for rescission of the annuity contract accrued either in March or April 2008, when the contract was applied for or issued, respectively, or in June 2009, when Ms. Sandusky died and Mr. Sandusky became aware of the annuity at the latest.  All of these dates precede the April 2012 *Order* probating Ms. Sandusky's will, so it would appear that

*Whorley* would not apply because the claim likely accrued before Ms. Sandusky's estate was closed or will close.  However, the Court is loathe to venture into interpretations of state probate law and proceedings without more substantial explanation and evidence from the parties.[21]

"'Where standing is challenged as a factual matter, the plaintiff bears the burden of supporting the allegations necessary for standing with "competent proof."'"  *Perry v. Village of Arlington Heights*, 186 F.3d 826, 829 (7th Cir. 1999).

> The burden to establish standing is on the party invoking federal jurisdiction . . . and the elements she must show are:  (i) an injury in fact, which is an invasion of a legally protected interest that is concrete and particularized and, thus, actual or imminent, not conjectural or hypothetical; (ii) a causal relationship between the injury and the challenged conduct, such that the injury can be fairly traced to the challenged action of the defendant; and (iii) a likelihood that the injury will be redressed by a favorable decision.

*Scanlan v. Eisenberg*, 669 F.3d 838, 841 -42 (7th Cir. 2012).  Mr. Sandusky, in his personal capacity, has failed to show a legal and factual basis for his standing.  Specifically, he has failed to show that he, in his personal capacity as heir independent of the estate of his mother through its duly appointed personal representative, has an injury of a legally

---

[21] In this context, the Court notes the provisions of Ind. Code 29-1-17-14.  Subsection (a) authorizes a court to reopen a closed estate and appoint, or reappoint, a personal representative if "other property" of an estate is discovered, any necessary act by the personal representative remains unperformed, "or for any other proper cause."  Subsection (b) provides:  "Whenever any solvent estate has been closed, and it therefore appears that any assets thereof have not been fully administered upon, the court may, if it appears practicable, order such assets distributed to, or title vested in, the persons entitled thereto after compliance with requirements as to an inheritance tax imposed under IC 6-4.1, in lieu of reopening the estate as provided in the preceding subsection."  *See In re Estate of Kalwitz*, 923 N.E.2d 982 (Ind. Ct. App. 2010), *trans. denied*.

protected interest that is sufficiently concrete and particularized.

The Court also notifies the parties that it doubts that Mr. Sandusky has personal standing for another reason not raised by St. Jude.  It appears that Mr. Sandusky is not the "sole and only heir and beneficiary" of his mother.  The *Will* names the *Trust* as the sole beneficiary of Ms. Sandusky's estate; there is no bequest to Mr. Sandusky.  Thus, he would benefit from any recovery, if at all, only indirectly through the *Trust*.  While Mr. Sandusky asserts in some of his filings that he is a beneficiary under the *Trust*, there is no such allegation to that effect in the *Sandusky Claim* on which to base a finding that he has standing to seek rescission of the annuity contract.  Finally, while the *Will*, its *Codicil*, and the *First Amendment to Trust Agreement of Lucille M. Sandusky* were submitted with Mr. Sandusky's *Response*, the Trust Agreement was not.  From the *Trust*'s *First Amendment* [doc. 51-1], it is evident that Mr. Sandusky also is not the sole beneficiary of the *Trust*.  Paragraph A 1 of the *First Amendment* lists specific bequests to five other individuals in the total amount of $40,000.  It is unknown whether the Trust Agreement names other beneficiaries.  There are additional potentially significant unknowns:  for example, whether there is or was sufficient property "poured over" from the estate to the *Trust* to fulfill all of the *Trust*'s specific bequests; if not, what the priorities are among the beneficiaries; and, if all bequests have been made, whether Mr. Sandusky is the residual beneficiary such that any additional property coming into the *Trust* would be paid to him.  The answers to these questions could be determinative of Mr. Sandusky's personal standing, under *Inlow*, *Whorley*, and

other authority.

Therefore, the claim of Mr. Sandusky, in his personal capacity, should be dismissed. He will be afforded an opportunity to move to file an amended complaint to allege facts showing that he has standing in his personal capacity to assert a claim for rescission of the annuity contract.

## Conclusion

For the reasons set forth above, **(1)** St. Jude's *Motion to Dismiss for Failure to File Claim within Two Year Statute of Limitations* [doc. 38] is **DENIED**; **(2)** St. Jude's *Motion to Dismiss Complaint as to Thomas Edward Sandusky as Trustee etc.* [doc. 41] is **GRANTED**; and **(3)** St. Jude's *Motion to Dismiss Complaint as to Thomas Edward Sandusky as Sole and Only Heir and Beneficiary etc.* [doc. 43] is **GRANTED**. No later than thirty days from the date of this Entry, Mr. Sandusky may file a motion for leave to file an amended complaint, with proposed complaint attached, that corrects the deficiencies found herein.

**DONE this date:**  08/30/2012

Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana

Distribution to all ECF-registered counsel of record *via* e-mail.

28